**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ALPHA TECHNOLOGY U.S.A.
CORPORATION,

        Plaintiff,

v.                                  Case No. 6:13-cv-1062-Orl-37TBS

MLSNA DAIRY SUPPLY, INC; and
PHIL MLSNA,

        Defendants.

## ORDER

This cause is before the Court on the following:

1. Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), or in the Alternative Due to Improper Venue Pursuant to Rule 12(b)(3), Fed. R. Civ. P. (Doc. 17), filed August 21, 2013; and

2. Plaintiff's Response in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or in the Alternative Motion to Conduct Jurisdictional Discovery with Memorandum of Law Incorporated Herein (Doc. 18), filed September 4, 2013.

For the reasons set forth below, the Court finds that Defendants' Motion to Dismiss is due to be granted.

## BACKGROUND

Defendant Phil Mlsna ("Mlsna") is a resident of Wisconsin and the President of Defendant MLSNA Dairy Supply, Inc. ("MDS"), a Wisconsin corporation located in

Wisconsin. (Doc. 17-1, ¶¶ 2–3.) Plaintiff is a Florida corporation that "manufactures, markets, and distributes teat-scrubbing equipment, disinfectants, comfort brushes and other related products for use on dairy cows inside the United States." (Doc. 1, ¶¶ 2, 9.) Plaintiff is the owner by assignment of U.S. Patent Number 8,402,920 (the "'920 Patent"), which issued on March 26, 2013. (Doc. 1-2.) The '920 Patent concerns a system and method for cleaning teats of milk-producing animals. (*Id.*)

Plaintiff asserts the following claims: (1) direct infringement of the '920 Patent ("Count One"); (2) indirect infringement of the '920 Patent ("Count Two"); (3) tortious interference with contractual relationships ("Count Three"); (4) tortious interference with potential advantageous business relationships ("Count Four"); (5) breach of contract ("Count Five"); and (6) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") ("Count Six"). (Doc. 1.) Plaintiff alleges that this Court has subject-matter jurisdiction over Counts One and Two pursuant to 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over Counts Three through Six pursuant to 28 U.S.C. § 1367. (*Id.* ¶ 5.) Plaintiff further alleges that this Court has personal jurisdiction over Defendants pursuant to Fla. Stat. §§ 48.193(1)(a)(2), 48.193(1)(a)(7), and 48.193(2). (*Id.* ¶¶ 6–7.) Finally, Plaintiff alleges that venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) and 1400(b).

Defendants move to dismiss all of Plaintiff's claims on the grounds that this Court cannot exercise personal jurisdiction over either Defendant under Florida's long-arm statute and the Due Process Clause of the U.S. Constitution. (Doc. 17.) Alternatively, Defendants contend that venue is not proper in this Court.[1] (*Id.*) Plaintiff opposes,

---

[1] The issues surrounding proper venue and jurisdiction in a patent suit are identical; accordingly, the Court has not separately addressed the venue

contending that Defendants are subject to personal jurisdiction in this Court because Defendants: (1) had an "ongoing business relationship with Plaintiff in January and February of 2012"; (2) breached a contract in Florida; and (3) have caused harm to Plaintiff in Florida by: (a) making disparaging and false and misleading statements about Plaintiff outside Florida, (b) using Plaintiff's confidential business information outside Florida, (c) selling and offering infringing products for sale outside Florida, and (d) "inducing infringement through the use and distribution of a YouTube video and other advertising materials that were both accessible and accessed by Plaintiff in Florida." (Doc. 18, pp. 2–3.)

## STANDARDS

### A. Rule 12(b)(2)

When a court lacks personal jurisdiction over a defendant, the court is obligated to dismiss the action. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendants. *Avocent Huntsville Corp. v. Aten Int'l, Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Pureterra Naturals, Inc. v. Cut-Heal Animal Care Prods., Inc.*, 674 F. Supp. 2d 1294, 1296 (M.D. Fla. 2009). To establish personal jurisdiction, the plaintiff must satisfy a two-part test. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). First, the plaintiff must prove that a basis for jurisdiction exists under Florida's long-arm statute,

---

arguments. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (holding that "no separate venue inquiry is necessary" because venue in a patent action against a corporate defendant "exists wherever there is personal jurisdiction").

3

Fla. Stat. § 48.193. *Madara*, 916 F.2d at 1514. Second, the plaintiff must prove that the defendants' contacts with Florida are sufficient to satisfy the Due Process Clause. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315–17 (1945); *Venetian Salami Co.*, 554 So. 2d at 502.

Where a Rule 12(b)(2) motion is resolved without discovery or an evidentiary hearing, the plaintiff's burden of proof is the same as necessary to withstand a motion for directed verdict.[2] *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 809 (11th Cir. 2010); *e.g., Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). "If a plaintiff pleads sufficient material facts to establish a basis for personal jurisdiction and a defendant then submits affidavits controverting those allegations, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction, unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 F. App'x 738, 741 (11th Cir. 2006). Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the Court must "construe all reasonable inferences in favor of the non-movant plaintiff." *PVC Windoors, Inc.*, 598 F.3d at 810.

**B. Florida's Long-Arm Statute**

This Court examines Florida's long-arm statute as would the Florida Supreme Court, and strictly construes the statute. *See Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F. 2d 889, 890–91 (11th Cir. 1983). Florida's long-arm statute provides for both specific jurisdiction conferred by § 48.193(1) and general jurisdiction conferred by § 48.193(2). *Miller v. Berman*, 289 F. Supp. 2d 1327, 1334 (M.D. Fla.

---

[2] Evidentiary hearings on the issue of personal jurisdiction are held at the discretion of the Court. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006).

2003) (citing *Nw. Aircraft Capital Corp. v. Stewart*, 842 So. 2d 190, 193 (Fla. 5th DCA 2003)). The provision conferring general jurisdiction provides: "[a] defendant who is engaged in substantial and not isolated activity within [Florida], whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of [Florida], whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). The provisions conferring specific jurisdiction provide:

> A person, whether or not a citizen or resident of [Florida], who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of [Florida] for any cause of action *arising from any of the following acts*: . . . Committing a tortious act within [Florida]. . . [or] Breaching a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida].

Fla. Stat. § 48.193(1)(a)(2), (7) (emphasis added).

## C. Due Process

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984). Due process requires that a defendant have sufficient "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. "The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994); *e.g., In re Farmland Indus., Inc.*, No. 3:05-CV-587-J-32MCR, 2007 WL 1018367, at *3 (M.D. Fla. Mar. 20, 2007).

When subject-matter jurisdiction is based on patent claims, the Court must apply the precedent of the U.S. Court of Appeals for the Federal Circuit in analyzing personal

jurisdiction due process issues. *Nuance Commc'ns v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010) (noting that "Federal Circuit law rather than the law of the regional circuit" applies to issues of a "district court's exercise of personal jurisdiction over an accused infringer"); *e.g., 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377–78 (Fed. Cir. 1998) (finding that Ninth Circuit "improperly applied Ninth Circuit law in the federal due process analysis"); *Roblor Mktg. Group, Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1137 (S.D. Fla. 2009) ("Federal Circuit law governs the issue of whether a court has personal jurisdiction over a defendant in a patent infringement claim.").

## DISCUSSION

### A. The Jurisdictional Facts

In support of their motion to dismiss, Defendants submitted the Declaration of Mlsna. (Doc. 17-1.) According to Mlsna, he has no links to Florida at all. (*Id.* ¶¶ 2–9.) Mlsna has never resided or worked in Florida, he owns no property or business in Florida, and he visited Florida only once, five years ago, for a family vacation. (*Id.*) Mlsna also states that MDS currently has no links to Florida and has "never maintained an office or other place of business outside the State of Wisconsin." (*Id.* ¶¶ 10–20.) Mlsna denies that MDS has ever "sold any equipment, [or] provided any services" in Florida. (*Id.* ¶ 14.) Mlsna further denies that MDS ever advertised or offered to sell any product or service in Florida–including the accused product. (Doc. 17-1, ¶¶ 15, 17.) Finally, MDS's website (www.mdsi.biz), "does not list, advertise, mention or reference" the accused system and is for informational purposes only. (*Id.* ¶ 20.)

According to Mlsna, MDS's only link to Florida relates to its brief business dealings with Plaintiff in late December 2011 through early February 2012, which

resulted in MDS's purchase of four teatscrubbing systems from Plaintiff. (Doc. 17-1, ¶¶ 24–35.) Although Defendants admit that Mlsna discussed with Plaintiff the possibility of MDS becoming an authorized dealer for Plaintiff, Defendants deny that MDS and Plaintiff ever "entered into a dealership agreement." (*Id.* ¶¶ 27, 32; Doc. 17, pp. 8–9.) Rather, the business relationship between MDS and Plaintiff consisted of only six to eight communications by phone and e-mail (Doc. 17-1, ¶¶ 26, 35) and MDS' purchase of four Future Cow teatscrubbing systems, which were installed on dairy farms in Wisconsin (*id.* ¶ 31). Mlsna avers that MDS has not "participated in any negotiations" with Plaintiff since February 2012. (*Id.* ¶ 33.) Further, no "representative, officer or employee of [MDS] has ever met with a representative of [Plaintiff]" in Florida. (*Id.* ¶ 36.)

Plaintiff offers nothing to rebut Defendants' characterization of MDS's website or Defendants' denials that they have sold or offered any product for sale in Florida. Nonetheless, Plaintiff contends that Defendants subjected themselves to personal jurisdiction in Florida when they entered into a "business relationship" with Plaintiff by calling Plaintiff in Florida in December 2011, and telling Plaintiff that Mlsna "owned his own dairy named MDS dairy, [and] he also owned a dairy supply dealership in Cashton, WI . . ., and [Mlsna] made it clear . . . that he was interested in becoming a FutureCow dealer and selling the FutureCow Teatscrubber." (Doc. 18-1, ¶ 7.) Plaintiff agrees that its representative spoke with Mlsna "on the phone and via email at least six to eight times" from December 2011 to March 2012. (*Id.* ¶ 8; Doc. 17-1, ¶ 26.)  Plaintiff claims that during these conversations, it "disclosed certain confidential business information to Defendant," including "customer names, pricing, testing and sales information for the FutureCow Teatscrubber." (Doc. 18-1, ¶ 9.)

7

Plaintiff also submits that MDS purchased a FutureCow Teatscrubber from Plaintiff for their own dairy as well as three other systems which were installed in other dairies in Wisconsin. (Doc. 18-1, ¶ 11; Doc. 17-1, ¶ 31.) According to Plaintiff, MDS initially paid Plaintiff by check sent to Florida for "services, parts and chemicals" supplied by Plaintiff in January 2012 related to the four systems (Doc. 18-1, ¶ 13); however, MDS failed to pay Plaintiff for additional "services, parts and chemicals" supplied by Plaintiff in February 2012. (*Id.* ¶ 14.) The business relationship between Plaintiff and Defendants ended "[s]ometime around February of 2012, [when Plaintiff] disclosed to [Mlsna] that [Plaintiff] had entered into a business relationship with GEA." (*Id.* ¶ 16; Doc. 17-1, ¶¶ 30, 33.) In the months after this event, Mlsna allegedly went "into the three dairies and uninstalled the FutureCow Teatscrubber systems and installed" the MTech System, which allegedly infringes the '920 Patent. (Doc. 18-1, ¶ 16.)

Since the end of the parties' business relationship, Plaintiff contends that Defendants have "caused injury to [Plaintiff] in Florida" by: (1) making "disparaging statements about [Plaintiff] and the FutureCow Teatscrubber at a trade show in Wisconsin" (Doc. 18-1, ¶ 17); (2) visiting and contacting Plaintiff's "customers and potential customers all across the U.S. in an attempt to both tortuously [sic] interfere with [Plaintiff's] business relationships and to install its infringing MTech system" (*id.* ¶ 18); (3) "offering for sale and selling the infringing system to dairies all across the U.S., including, but not limited to, Wisconsin, Ohio and Colorado" (*id.* ¶ 19); (4) advertising the sale of the infringing system on the Internet, which is accessible in Florida (*id.* ¶¶ 20–21); and (5) using "the confidential customer names, pricing information, testing information and sales strategies to intentionally and unjustifiably

interfere with [Plaintiff's] business" (*id.* ¶ 23).

**B. General Jurisdiction**

General jurisdiction refers to the power of a court to adjudicate any cause of action involving a particular defendant if that defendant "engaged in substantial and not isolated activity within Florida, irrespective of whether the claim asserted arises from that activity." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Here, Plaintiffs allege in their Complaint that Defendants are subject to general jurisdiction. (Doc. 1, ¶¶ 6, 7.) The Defendants' declaration refutes the Plaintiff's conclusory allegation of general jurisdiction, (Doc. 17-1), and Plaintiff did not address general jurisdiction in its response to Defendants' motion to dismiss. (Doc. 18, at 4 (stating that "Plaintiff will only address specific personal jurisdiction in its response").) Accordingly, the Court finds that Plaintiff has not established that general jurisdiction exists in this action. *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1123 (M.D. Fla. 2006) (finding no general jurisdiction where plaintiff discussed only specific jurisdiction in response to a motion to dismiss).

**C. Specific Jurisdiction**

Courts may exercise specific jurisdiction over a nonresident defendant only when the plaintiff's cause of action arises from or is directly related to the defendant's contacts with the forum state. *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.27 (11th Cir. 2009); *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006) (citing *Consol. Def. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)). Accordingly, Plaintiff must establish personal jurisdiction in relation to each claim asserted in the Complaint. *See Rhodes v. Unisys Corp.*, 170 F. App'x 681, 684 (11th Cir. 2006) (requiring court to "review each cause of action to see if

any of them sufficiently connect [Defendant] to the jurisdiction such that the exercise of jurisdiction over him is appropriate").

### 1. Patent Claims, Counts One and Two

To establish personal jurisdiction over Defendants for its patent claims, Plaintiff relies on § 48.193(1)(a)(2), Florida Statutes, which provides for jurisdiction in Florida over any person who "commit[s] a tortious act within" Florida. (Doc. 18, pp. 4–8.) Plaintiff argues that Defendant's infringing acts outside of Florida constitute torts in Florida because Plaintiff has suffered injury in Florida as a result of the out-of-state infringing conduct. (*Id.*) Legal support exists for Plaintiff's argument that Florida's long-arm statute may be satisfied by patent infringement outside of Florida. *Pureterra Naturals, Inc.*, 674 F. Supp. 2d at 1297 (holding that patent infringement "constitutes a tortious act within the meaning of Florida's long-arm statute for the purposes of establishing personal jurisdiction"); *Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1337 (M.D. Fla. 2002) (holding that "alleged patent infringement satisfies Florida's statute on long-arm jurisdiction"). *But see Instabook Corp.*, 469 F. Supp. 2d at 1123 (rejecting characterization of patent infringement as a "tort" for purposes of Florida's long-arm statute); *Structural Panels, Inc. v. Texas Aluminum Indus., Inc.*, 814 F. Supp. 1058, 1065 (M.D. Fla. 1993) (granting 12(b)(2) motion to dismiss where plaintiff "submitted insufficient evidence that [defendant] manufactured, marketed or sold the alleged infringing product in Florida or negotiated with any parties to do the same").

Assuming Florida's long-arm statute is satisfied by Defendants' alleged sales of infringing systems "to dairies all across the U.S., including, but not limited to, Wisconsin, Ohio and Colorado" (Doc. 18-1, ¶ 19), the Court still must determine if this Court's

exercise of personal jurisdiction over Defendants for Plaintiff's patent claims is consistent with due process. The Federal Circuit has outlined a three-prong minimum contacts test for determining if specific jurisdiction exists over patent claims: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." *3D Sys., Inc.*, 160 F.3d at 1378; *e.g., Avocent Huntsville Corp.*, 552 F.3d at 1332 (noting that in "the ordinary patent infringement suit . . . the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum").

Defendants deny that any of the allegedly infringing conduct occurred in Florida or that they directed any allegedly infringing activity to residents of Florida. (Doc. 17.) Plaintiff has not successfully rebutted Defendants' denials. (Doc. 18.) The only activities directed at a Florida resident were Defendants' business contacts with Plaintiff from December 2011 to February 2012. Such contacts are insufficient to establish personal jurisdiction because Plaintiff's patent claims do not arise out of Defendants' business contacts with Plaintiff. Indeed, the parties' business dealings occurred before the '920 Patent even issued. *Maynard v. Phila. Cervical Collar Co.*, 18 F. App'x 814, 816 (Fed. Cir. 2001) (finding communications concerning a possible business venture that occurred two years prior to alleged infringement insufficient to establish personal jurisdiction in patent case); *e.g., In re Farmland Indus., Inc.*, 2007 WL 1018367, at *11 (holding that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions").

Further, Defendants' alleged infringing conduct outside of Florida, while arguably sufficient to satisfy Florida's long-arm statute, is insufficient to satisfy the requirements of due process. *Response Reward Sys., LLC*, 189 F. Supp. 2d at 1338 (dismissing patent infringement claims for lack of personal jurisdiction where defendant had "no stores, no employees, no offices, and no property in Florida," it did not "solicit or advertise in Florida," and it did not receive profit from any "residents of Florida"); *Elite Alum. Corp. v. Trout*, 451 F. Supp. 2d 1311, 1316–17 (S.D. Fla. 2006) (dismissing patent infringement claims for lack of personal jurisdiction where single sale of infringing product in state was orchestrated by plaintiff); *e.g., AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012) (dismissing patent infringement claims on personal jurisdiction grounds where plaintiff failed to identify substantial infringing activity in the forum); *Med. Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1141 (Fed. Cir. 2008) (holding that mere display of infringing product at trade show in forum was insufficient to establish personal jurisdiction).

Finally, Plaintiff argues that Defendants subjected themselves to the jurisdiction of this Court for patent infringement based on a YouTube video that arguably demonstrates use of the accused system. (Doc. 18, pp. 2–3.) Although Plaintiff claims that it viewed the video over the Internet in Florida, nothing in the record indicates that Defendants purposefully directed the video to Florida residents. Further, there is no evidence that any infringing system has made its way into Florida; thus, even if the video were viewed in Florida, there has been no allegation that any viewer actually infringed the '920 Patent here. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (noting the well-settled principle, "that there can be no indirect infringement without direct infringement"). Thus, the Court rejects Plaintiff's

argument that the YouTube video is sufficient to establish personal jurisdiction over Defendants in Florida for alleged patent infringement. *Cf. Roblor Mktg. Group, Inc.*, 645 F. Supp. 2d at 1143 (dismissing patent infringement claims where only contact with state was website, which did not "even remotely" permit sales of the accused product); *Instabook Corp.*, 469 F. Supp. 2d at 1127 (dismissing patent infringement claims for lack of personal jurisdiction because the defendant "could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents"); *Zamora Radio, LLC v. Last.fm LTD.*, No. 09-20940-CIV, 2011 WL 2580401, at *10 (S.D. Fla. Jun. 28, 2011) (granting Rule 12(b)(2) motion to dismiss where the defendant's only "forum-related activities" were "through its website"). Because this Court does not have personal jurisdiction over Defendants with regard to Plaintiff's patent claims, such claims are due to be dismissed.

### 2. State Law Claims

Plaintiff alleges that this Court has jurisdiction over Plaintiff's state law claims based on 28 U.S.C. § 1367(a). (Doc. 1, ¶ 5.) Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Section 1367 "confers supplemental jurisdiction with respect to both subject matter and personal jurisdiction where the 'same case or controversy' requirement is satisfied." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003).

Here, the only claims of which this Court has "original" subject-matter jurisdiction are Plaintiff's patent claims. (Doc. 1.) Accordingly, the Court can exercise supplemental

jurisdiction over the state law claims only if Plaintiff establishes that such claims are so related to the patent claims that they form part of the same case or controversy.[3] Plaintiff has not made that showing. First, Plaintiff has not alleged that Plaintiff's state law claims "are so related" to the patent claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Second, even if Plaintiff had met this pleading requirement, after dismissal of Plaintiff's patent claims, the basis for this Court's exercise of supplemental subject-matter jurisdiction over Plaintiff's state law claims is gone. Thus, the Plaintiff's state law claims also are due to be dismissed. *E.g., Blankenship v. Gulf Power Co.*, No. 13-12002, 2013 WL 6084265, at *3 (11th Cir. Nov. 20, 2013) (holding that district court "properly declined to exercise supplemental jurisdiction" over state law claim where it had dismissed alleged federal claims); *Semiconductor Energy Lab. Co. v. Nagata*, 706 F.3d 1365, 1372 (Fed. Cir. 2013) (affirming dismissal of state law claims upon dismissal of patent claims).

The Court will grant Plaintiff leave to file an amended complaint setting forth sufficient allegations concerning subject-matter jurisdiction and personal jurisdiction. In amending its complaint, Plaintiff must plead grounds for personal and subject-matter jurisdiction concerning each of its claims. Further, Plaintiff cannot establish personal jurisdiction over its patent claims based on contacts with Florida that relate only to Plaintiff's state law claims.

**D. Jurisdictional Discovery**

In its response to Defendants' motion to dismiss, the Plaintiff requests leave to conduct jurisdictional discovery. (Doc. 18, p. 19 (requesting ninety days "to conduct

---

[3] The reverse is not true – if a plaintiff establishes personal jurisdiction concerning its state law claims, personal jurisdiction over federal claims arising from the same case or controversy is not established.

discovery").) The Court has discretion whether to grant a request for jurisdictional discovery. *C Change Surgical LLC*, 541 F.3d at 1142; *e.g., Instabook Corp.*, 469 F. Supp. 2d at 1127. A plaintiff's request for jurisdictional discovery "must set forth the specific information sought that will establish personal jurisdiction." *Zamora Radio, LLC*, 2011 WL 2580401, at *11–12; *e.g. United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009) (affirming denial for jurisdictional discovery where request was set forth only in response to motion to dismiss); *Instabook Corp.*, 469 F. Supp. 2d at 1127 (denying jurisdictional discovery where request failed to explain "how such discovery would bolster its contentions"). Because Plaintiff's request for jurisdictional discovery is insufficiently specific, it is due to be denied without prejudice. Plaintiff will be granted leave to file a renewed motion for jurisdictional discovery.

## CONCLUSION

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), or in the Alternative Due to Improper Venue Pursuant to Rule 12(b)(3), Fed. R. Civ. P. (Doc. 17) is **GRANTED**.

2. Plaintiff's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

3. On or before December 13, 2013, Plaintiff may file an Amended Complaint in accordance with this Order. If Plaintiff fails to file an Amended Complaint in the time prescribed in this Order, this action will be closed without further notice.

4. On or before December 13, 2013, Plaintiff may file a Motion for Jurisdictional Discovery in accordance with this Order.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 26, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record